# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **ADRIAN L. BLISSIT, JR.** | Case No. 2:15-cv-2598 |
| Plaintiff, | **Judge Graham** |
| v. | |
| | **Magistrate Judge Vascura** |
| **OFFICER FIQURIS,** | |
| Defendant. | |

## OPINION & ORDER

Plaintiff Adrian L. Blissit, Jr., a former prison inmate, alleges that he was assaulted by Defendant Officer Fiquris while incarcerated at the Belmont Correctional Institution ("BeCI"). Mr. Blissit asserts his claim against Officer Fiquris pursuant to 42 U.S.C. § 1983, alleging that Officer Fiquris violated his Eighth Amendment right to be free from cruel and unusual punishment. This matter is before the Court on Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ. J., ECF No. 41). For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## I. BACKGROUND

### A. Factual Background

The event at issue in this case took place on January 16, 2015 while Mr. Blissit was incarcerated at BeCI. (Def.'s Mot. Summ. J. 3; Pl.'s Resp. to Def.'s Mot. Summ. J. 3, ECF No.

1

45). The parties agree that Officer Fiquris was working as a corrections officer at the entrance of the dayroom in Six House and encountered Mr. Blissit as he entered the dayroom. (*Id.*). The parties also agree that Officer Fiquris stopped Mr. Blissit by stepping in his path while Mr. Blissit was going to the sink to get a drink of water. (Answer 2, ECF No. 7; Pl.'s Resp. 3).

What occurred after Officer Fiquris stopped Mr. Blissit remains in dispute. Mr. Blissit recalls that he asked Officer Fiquris if he had "done something wrong," to which Officer Fiquris replied, "no." (Pl.'s Resp. 3). Mr. Blissit maintains that while he attempted to move around Officer Fiquris, Officer Fiquris once again blocked his path and asked the other corrections officers present, Officers Wees and George, "if they want to see something funny." (*Id.*). According to Mr. Blissit, Officer Fiquris's statement was followed by Officer Fiquris punching Mr. Blissit in the groin (scrotum). (*Id.*).

Officer Fiquris offers a different account. Officer Fiquris instead recalls that upon Mr. Blissit's entry into the dayroom he asked Mr. Blissit where he was going, and Mr. Blissit replied that he was going to the sink to get water. (Def.'s Mot. Summ. J. 3). According to Officer Fiquris, he asked Officers Wees and George if Mr. Blissit could get water. (*Id.*). Officer Fiquris explains that Mr. Blissit overheard his question and said, "Come on, Fig, I'll die of thirst." (*Id.*). Officer Fiquris claims he permitted Mr. Blissit to go to the sink to get water and told him to clear the area after he was done. (*Id.*). Officer Fiquris also claims that following his instructions to Mr. Blissit, he sat down at the officers' platform. (*Id.*). Officer Fiquris further states that he observed Mr. Blissit leaving the area as instructed, and while passing the officers' desk area, Mr. Blissit smiled,

pointed his finger at Officer Fiquris, and made an inaudible statement. (*Id.*). Officer Fiquris maintains that he had no other contact with Mr. Blissit that day. (*Id.*).

The next day, Mr. Blissit reported the incident to medical personnel, who contacted BeCI supervisory staff member, Captain Charles R. Cumberledge Jr. (Pl.'s Mot. for Sanctions Ex. D, at 38, ECF No. 46-4). Captain Cumberledge interviewed Mr. Blissit about the alleged assault. (*Id.*). After viewing the video footage of the event, Captain Cumberledge prepared an incident report pursuant to Ohio Admin. Code § 5120–9–03(C)(1). Section 5120–9–03, which addresses inmate complaints of use of force where no use of force report has been made, provides that, " . . . [i]f the inmate complaint is oral, the staff member receiving the complaint shall document it in an incident report and forward a copy to the IIS [Inspector of Institutional Services]." Captain Cumberledge's report dated January 17, 2015, states, "it would appear that Officer Fiquris caused the injury." (Pl.'s Mot. Ex. D., at 38).

That same day, Captain Cumberledge contacted Investigator Paul Bumgardner and advised him of the incident. (*Id.*). Investigator Bumgardner reviewed the video footage of the incident. (*Id.* at 22). He later interviewed Mr. Blissit on January 20, 2015. (*Id.* at 39). Investigator Bumgardner also interviewed Officers Fiquris, George, and Wees. (*Id.* at 24–37). On March 9, 2015, Investigator Bumgardner submitted an Investigation Summary Report to Warden Michele Miller. (*Id.* at 22). In his report, Investigator Bumgardner determined that the video footage and corresponding reaction of Mr. Blissit "supports a preponderance amount of evidence to support

that Officer Fiquris did, in fact, strike offender Blissit A634863 in the groin or abdomen area." (*Id.*).

Investigator Bumgardner's report triggered disciplinary proceedings against Officer Fiquris. A Pre-Disciplinary Conference was held on March 17, 2015 before Hearing Officer Eric Lyle. (Def.'s Mot. Summ. J. Ex. 4, Pre-Disciplinary Conf. Hr'g Officer's Rep., ECF No. 41-4). In a subsequent report issued on March 22, Mr. Lyle notes in his Findings of Fact section, "[t]hat through an investigation it was determined that on January 16, 2015, you struck an inmate in the groin/abdomen area causing this inmate to seek outside medical attention. You were also untruthful during this investigation about what transpired during this incident." (*Id.* at 2). In the same paragraph, Mr. Lyle also notes concerns about Officer Fiquris's social media activity following the January 16 incident. (*Id.*).

However, Mr. Lyle also remarks in the latter portion of the Mitigating/Aggravating Circumstances section of the same report that, "[t]he video evidence does not clearly show what happens between Officer Fiquris and the inmate in question. The video does show the inmate react in a way that suggests he was hit in the groin area but one can only assume that as the camera angle is on the wrong side." (*Id.*). Of the alleged rules violations levied against Officer Fiquris, Mr. Lyle determined that there was only "just cause" to support discipline against Officer Fiquris for a violation of Rule #8, failure to carry out a work assignment or the exercise of poor judgment in carrying out an assignment. (*Id.*).

On March 23, 2015, Warden Miller issued a written reprimand to Officer Fiquris for his violation of Rule #8. (Pl.'s Mot. Ex. D., at 3, ECF No. 46-4). In her reprimand, Warden Miller clarified that the violation pertained to the social media postings correlating with the timing of the

alleged assault. (*Id.*). On June 17, 2015, Officer Fiquris entered into a Grievance Settlement Agreement, which states, "The Written Reprimand shall cease to have force and effect and shall be viewed as a corrective counseling." (*Id.* at 1).

The matter was also assigned to the Ohio State Highway Patrol for investigation. (Def.'s Mot. Summ. J. Ex. 5, Investigative Notes, ECF No. 41-5). The investigating officer, Trooper Trenas Weaver, reviewed the surveillance video of the incident and recorded in his February 2, 2015 investigative notes that:

> Inmate Blissit then walks through the doors and is stopped by Officer Fiquris. The two then appear to be talking in the corner away from the Officers' Station. Officer Fiquris then turns away from Inmate Blissit and faces the Officers' Station. At 1152 hours, with Officer Fiquris standing in front of him, Inmate Blissit is viewed bending over. Officer Fiquris then enters the Officers' Station and Inmate Blissit walks towards the sink area holding onto the wall and appears to be in pain. Once Inmate Blissit is at the sink, he is viewed leaning over the sink for approximately one minute and forty-nine seconds. Inmate Blissit then leaves the sink area, walks past the Officers' Station, and through the double doors. It appears that Inmate Blissit does not talk to anyone as he returns to B-side of 6 House.

(*Id.*).

On February 3, 2015, the Criminal Division of the Belmont County Prosecuting Attorney issued a letter to Trooper Weaver (Def.'s Mot. Summ. J. Ex. 6, Feb. 3, 2015 Letter, ECF No. 41-6). The letter describes that after reviewing Trooper Weaver's report, Mr. Blissit's medical records, and the video of the alleged assault, the assistant prosecuting attorney assigned to the case did not see an assault and determined there was not sufficient evidence to charge an assault. (*Id.*). The office declined to prosecute, and the case was closed. (*Id.*).

Beginning on February 19, 2015 and continuing through July 27, 2015, Mr. Blissit submitted a total of six Informal Complaint Resolutions ("ICRs") (Def.'s Mot. Summ. J. Ex. 2, Grievance File, at 1, ECF No. 41-2). In all but one of the ICRs he submitted, Mr. Blissit cites

retaliation for the assault by an unspecified corrections officer against him as the motivating factor for the subject of his complaint. (*Id.* at 2–7). The first three ICRs submitted contained accusations of a harsh sentence received by Mr. Blissit from the rules infraction board ("RIB"). (*Id.* at 5–7). The action taken in each of the first three ICRs was to clarify that the proper avenue for the type of complaint submitted was the RIB appeal process. (*Id.*). In response to Mr. Blissit's fourth ICR, which contained a harassment complaint, the action taken referenced the BeCI's compliance with Ohio Administrative Code § 5120–9–04, which describes the use of appropriate supervision and a prohibition against any related discriminatory practices. (*Id.* at 4). Mr. Blissit's fifth ICR contained an allegation of refusal to file paperwork, which was remedied in the corresponding action taken, and was the only ICR without a retaliation claim. (*Id.* at 3). Mr. Blissit's sixth and final ICR was submitted to the "D. Warden of Operations" on July 27, 2015 and accused the institution of unjustly withholding his property, i.e., a television. (*Id.* at 2). Mr. Blissit stated he felt, "that this is some form of retaliation on behalf of the c/o who I wrote up for improper use of force." (*Id.*). The responsive action taken was to remind Mr. Blissit, " . . . you must address your complaints with the immediate supervisor." (*Id.*).

### B. Procedural Background

On July 14, 2015, Mr. Blissit filed a Complaint against Officer Fiquris in his individual capacity under 42 U.S.C. § 1983. (Compl., ECF No. 3). Mr. Blissit alleges that Officer Fiquris acted in contravention of the Eighth Amendment to the United States Constitution by violating his right to be free from cruel and unusual punishment. (*Id.*). On August 26, 2016, Officer Fiquris filed a Motion for Summary Judgment. (Def.'s Mot. Summ. J., ECF No. 12). This Court issued an order on February 15, 2017 denying the motion without prejudice. (Order, ECF No. 27). On

October 18, 2017, Officer Fiquris filed a subsequent Motion for Summary Judgment, arguing that: 1) he did not assault Mr. Blissit; 2) the alleged assault does not constitute an Eighth Amendment violation; 3) Mr. Blissit only suffered a de minimus injury; 4) Officer Fiquris's actions are protected by the doctrine of qualified immunity; and 5) Mr. Blissit failed to exhaust his administrative remedies before filing this action. (Def.'s Mot. Summ. J., ECF No. 41).

The Court now reviews this motion.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary material in the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Courts consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013) (internal citation omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). The critical question here is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.,* 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted). "Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn,* No. 10–3110, 2011 WL 4469612, at *3 (6th Cir. Sept. 28, 2011) (quoting *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts. [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.,* 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotations and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

## III. DISCUSSION

In his Motion for Summary Judgment, Officer Fiquris provides several grounds on which he believes summary judgment should be granted. It is the last of these that warrants discussion. In his fifth argument, Officer Fiquris asks the Court to grant summary judgment on Mr. Blissit's § 1983 claim, because Mr. Blissit failed to properly exhaust his available administrative remedies as set forth in the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997 before commencing this action. Section 1997e(a) provides that "no action shall be brought with respect to prison conditions under . . . (42 U.S.C. § 1983) . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Under the PLRA, exhaustion of available administrative remedies is a mandatory prerequisite to filing suit in federal court. *Jones v. Bock,* 549 U.S. 199, 211 (2007); *Porter v. Nussle,* 534 U.S. 516, 524 (2002). Even if the administrative process does not provide the monetary relief an inmate is

seeking, the inmate must first pursue all available administrative remedies prior to initiating suit. *Porter,* 534 U.S. at 524.

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA . . . .'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007)). Defendants bear the burden of proof on the affirmative defense of exhaustion. *Napier v. Laurel Cnty.,* 636 F.3d 218, 225 (6th Cir. 2011) (citations omitted) ("[F]ailure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants."). "Summary judgment is appropriate only if defendants establish the absence of a genuine dispute as to any material fact regarding non-exhaustion." *Surles*, 678 F.3d at 455.

Ohio has an established three-step inmate grievance procedure set forth in Ohio Administrative Code § 5120–9–31(K). This procedure is available to all inmates at each Ohio Department of Rehabilitation and Correction ("ODRC") facility regardless of their disciplinary status. Ohio Admin. Code § 5120–9–31(D). To properly exhaust a claim seeking relief "related to any aspect of institutional life that directly and personally affects the [inmate]," an inmate at an ODRC facility must comply with the three-step grievance procedure. *See* Ohio Admin. Code § 5120–9–31(A). All inmates receive written and oral information concerning the grievance procedure at reception and during orientation. Ohio Admin. Code § 5120–9–31(C).

Step one of the grievance procedure requires the inmate to submit an informal complaint to the direct supervisor of the staff member or to the department most directly responsible over the subject matter with which the inmate is concerned. This requirement may be waived if "the complaint is filed pursuant to rule 5120–9–03." Ohio Admin. Code § 5120–9–31(K)(1). If the

9

inmate is not satisfied with the outcome of step one or the informal complaint requirement has been waived, the inmate may take the second step by filing a notification of grievance ("NOG") with the Inspector of Institutional Services. Step two requires the NOG to be filed within fourteen calendar days of the date of the informal complaint response or waiver of step one. Ohio Admin. Code § 5120–9–31(K)(2). The inspector will investigate the matter and issue a written response to the inmate's grievance within fourteen calendar days of receipt, summarizing the inmate's complaint, the steps taken to investigate the complaint, and the inspector's findings and decision. *Id*.

If the inmate is dissatisfied with the outcome of step two, the inmate may pursue the third step within fourteen days calendar days of the disposition of grievance, which is an appeal to the Office of the Chief Inspector. Ohio Admin. Code § 5120–9–31(K)(3). The Chief Inspector is required to provide a written response within thirty calendar days following receipt of the appeal, and his or her decision is final. *Id.* An inmate does not exhaust his remedies under § 5120–9–31 until he has received a decision in an appeal to the Office of the Chief Inspector. If the inmate is still dissatisfied following receipt of the decision on appeal, an inmate may file a civil lawsuit in federal court. 42 U.S.C. § 1997e

Officer Fiquris argues that Mr. Blissit did not follow the three-step inmate grievance procedure outlined in § 5120–9–31. (Def.'s Mot. Summ. J. 18). He points out that instead, Mr. Blissit filed the six ICRs, none of which, Officer Fiquris avers, "specifically grieve the alleged assault." (*Id.* at 18–19; Def.'s Reply to Pl.'s Resp. to Def.'s Mot. Summ. J. 4, ECF No. 48). Officer Fiquris also draws attention to the fact that Mr. Blissit only reported the alleged assault to BeCI

supervisory staff and medical personnel, actions which are not required steps in § 5120–9–31's grievance procedure. (*See* Def.'s Mot. Summ. J. 19).

Officer Fiquris supports his arguments with the contents of Mr. Blissit's grievance file. (Def.'s Mot. Summ. J. Ex. 2, Grievance File, at 1–7). Mr. Eugene Hunyadi, Assistant Chief Inspector, ODRC, states in his affidavit, "After a review of these pertinent grievance records of former Inmate Blissit . . . filed during the relevant time periods . . . I find and conclude that Mr. Blissit did not properly and/or successfully exhaust his available administrative remedies with respect to his claim of excessive force, and/or assault against the Defendant in this case." (Hunyadi Aff. ¶ 12, ECF No. 41-1). Officer Fiquris therefore contends that Mr. Blissit did not complete any of the required three steps in the inmate grievance procedure and thus did not exhaust his administrative remedies as provided for in Ohio Administrative Code § 5120–9–31 and consequently, the PLRA's pre-suit mandate. (Def.'s Mot. Summ. J. 19; Def.'s Reply 3–4).

Mr. Blissit does not contest his lack of adherence to the inmate grievance procedure outlined in § 5120–9–31. To save his § 1983 claim against Officer Fiquris, Mr. Blissit instead relies on the procedure outlined in Ohio Administrative Code § 5120–9–03 as dictating the only action required by him in making his use of force claim. (Pl.'s Resp. 19). Section 5120–9–03(C) outlines the applicable procedure for inmate complaints of use of force where no use of force report has been made. In the absence of a use of force report, the Ohio Administrative Code allows for either written or oral inmate use of force complaints to any staff member. *Id*. at § 5120–9–03(C)(1).

Applying the contours of Ohio Administrative Code § 5120–9–03, Mr. Blissit states that by orally complaining about Officer Fiquris's use of force against him to BeCI supervisory staff

11

and medical personnel, he satisfied its requirement, as Officer Fiquris "failed to provide or even assert that a use of force report was filed." (Pl.'s Resp. 19). Mr. Blissit argues that because no use of force report was prepared, and he proffered the requisite complaint, he "properly exhausted his administrative remedies to the extent possible," which includes his participation in the Ohio State Highway Patrol investigation. (*Id.* at 18–20). The crux of Mr. Blissit's argument is that he was excused from following the inmate grievance procedure outlined in § 5120–9–31 and could instead follow the procedure contained in § 5120–9–03. (*See id.* at 19–20).

In reconciling the two sections of the Ohio Administrative Code at issue, the Court examines whether the one relied on by Mr. Blissit provides an exception to the PLRA's mandate. In short, it does not.

The PLRA commands that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has observed on numerous occasions that the PLRA's language is mandatory. *See, e.g., Ross v. Blake,* 136 S. Ct. 1850 (2016). "As we have often observed, that language is 'mandatory': An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Id.* at 1856. Like Mr. Blissit, numerous litigants have attempted to carve out an exception to the PLRA for their claims, and the Supreme Court has rejected "every attempt to deviate . . . from [the PLRA's] textual mandate." *Id.* at 1857 (citing *Booth v. Churner,* 532 U.S. 731 (2001); *Porter v. Nussle,* 534 U.S. 516 (2002); *Woodford v. Ngo,* 548 U.S. 81 (2006)). Notably, in *Porter,* the Supreme Court denied an attempt to carve out excessive force claims, like

12

the one Mr. Blissit asserts here, as such an exception is not consistent with the "uncompromising statutory text." 534 U.S. at 520 (2002). Likewise, in *Woodford,* the Supreme Court rebuffed a similar attempt for constitutional claims. 548 U.S. at 91, n.2.

In *Ross,* the Supreme Court maintained its earlier pronouncements that the PLRA requires an inmate to exhaust "available" administrative remedies, but further clarified that "available" meant that the administrative remedy was one that was "capable of use" to obtain "some relief for the action complained of." 136 S. Ct. at 1859 (quoting *Booth,* 532 U.S. at 102) (internal quotations omitted). In noting that the reality of the prison grievance systems may render some of the available administrative remedies unavailable, the Supreme Court laid out three circumstances providing an exception to the PLRA's exhaustion requirement. *Id.* at 1859. These three circumstances are: 1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use[—i.e.,] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"; and 3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.

None of these circumstances are present in Mr. Blissit's case. Administrative remedies were available to him. In fact, Mr. Blissit's own conduct in filing six ICRs demonstrates that not only were administrative remedies available to him, but that he was capable of using them.

Furthermore, none of the institution's responses to his ICRs, even though they failed to specify the alleged assault, indicate that he was thwarted from taking advantage of the grievance procedure.

Officer Fiquris's contention that Mr. Blissit failed to complete any of the required three steps in the inmate grievance procedure is incorrect, but not based upon Mr. Blissit's ICRs. Instead, by making an oral complaint to Captain Cumberledge and instituting the filing of an incident report pursuant to Ohio Administrative Code § 5120–9–03(C)(1), Mr. Blissit met the circumstances permitting waiver of step one. *See* Ohio Admin. Code § 5120–9–31(K)(1) (providing for waiver of step one when a "complaint is filed pursuant to rule 5120–9–03"). Therefore, he was not required to file an ICR relating to the January 16, 2015 use of force incident to satisfy step one. Where Mr. Blissit comes up short is in not proceeding to step two and filing a NOG within the fourteen-calendar day deadline and then further proceeding to step three. Even when step one is waived, § 5120–9–31 still requires an inmate to complete all three steps in the inmate grievance procedure. *See* Ohio Admin. Code § 5120–9–31(K)(2) (directing that an inmate submit a NOG even if "the informal complaint process has been waived"). Unless all three steps are taken, an inmate does not exhaust all available remedies and thereby satisfy the PLRA's mandate.

A use of force investigation triggered by Ohio Administrative Code § 5120–9–03 cannot serve as a substitute for the grievance procedure outlined in § 5120–9–31. "Use of Force or other investigations do not satisfy the PLRA's dictates." *Thomas v. Woolum,* 337 F.3d 720, 734 (6th Cir. 2003), abrogated on other gds. by *Woodford*, 548 U.S. 81. *See also Curry v. Scott*, 249 F.3d 493, 504 (6th Cir. 2001) (a prison use of force committee investigation "will not substitute for exhaustion through the prison's administrative grievance procedure"); *Brown v. Lebanon*

*Correctional Inst.,* No. 1:09-cv-513, 2009 WL 2913930, at *3 (S.D. Ohio Sept. 9, 2009) ("an internal investigation by an institution's use of force committee . . . will not substitute for exhaustion through the prison's administrative grievance procedure under Ohio Admin. Code § 5120–9–31") (citations omitted); *Smith v. Marion,* No. 1:15-cv-195, 2016 WL 4051875, at *5 (S.D. Ohio July 27, 2016), (Report and Recommendation), *adopted*, 2016 WL 4448243 (S.D. Ohio Aug. 24, 2016) ("A use of force investigation does not satisfy plaintiff's obligation to proceed through the steps of the prison's administrative grievance procedure.").

Participation in an investigation by the Ohio State Highway Patrol also cannot excuse an inmate's failure to exhaust § 5120–9–31's administrative remedies. "The exhaustion requirement in § 1997e(a) is directed at exhausting the *prisoner's* administrative remedies . . . [an] investigation by another agency does not satisfy the requirement of the statute." *Freeman v. Francis,* 196 F.3d 641, 644 (6th Cir. 1999) (emphasis in original). "Exhaustion must be through the prison's grievance procedure." *Thomas,* 337 F.3d at 742–43 (quoting *Freeman,* 196 F.3d at 644) (internal quotations omitted).

Likewise, courts cannot excuse an inmate's obligation to exhaust. *Ross,* 136 S. Ct. at 1856. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.* at 1857. Thus, there is none to be exercised here. Like the plaintiff in one of the cases Mr. Blissit cites to,[1] to support his argument that he exhausted all available remedies, Mr. Blissit "filed his federal complaint before allowing the administrative

---

[1] Mr. Blissit also points to *Napier v. Laurel Cnty.,* 636 F.3d 218, 223-24 (6th Cir. 2011) as being persuasive, but instead of the proposition Mr. Blissit hopes this case stands for, the thrust is exactly what Officer Fiquris is asserting, that the inmate must make an effort to comply with available administrative remedies before a court will entertain the notion that the institution failed to make them available to the inmate. Here, there is no question that the applicable administrative remedies were available to Mr. Blissit.

process to be completed." *Freeman,* 196 F.3d at 645.[2]  This misstep required the Sixth Circuit to dismiss Mr. Freeman's complaint, and here too, this Court must do the same.  As stated by our superior court, "The plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Id*.

Summary judgment is appropriate in the absence of a genuine dispute as to any material fact regarding non-exhaustion, and Officer Fiquris has met his burden.  There remains no genuine dispute of material fact that Mr. Blissit did not properly exhaust his administrative remedies prior to filing this lawsuit.  The conclusion that he failed to do so obviates the need for consideration of Officer Fiquris's alternate bases for summary judgment, and this Court therefore declines to do so.

## IV. CONCLUSION

The Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 41) and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Defendant for failure to properly exhaust his administrative remedies.

**IT IS SO ORDERED.**

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: November 29, 2018

---

[2] Mr. Blissit also notes the Sixth Circuit's acknowledgement of Ohio Admin. Code § 5120–9–03 at fn. 3 in this case, but the court never reaches the conclusion that this procedure can be utilized in lieu of § 5120–9–31.  In fact, the court stresses that a lack of a "use of force" report "demonstrates the importance of using the prison grievance process in order to alert prison officials to problems." *Id.* at 644.